IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Planned Parenthood of the  :
Columbia/Willamette, Inc.,
et al.,                    :

    Plaintiffs,        :

  v.                       :   Case No. 2:05-mc-0002

American Coalition of Life :
Activists, et al.,
                           :
    Defendants.

OPINION AND ORDER

    This case, which is an outgrowth of a trial which occurred in the District of Oregon and which resulted in a money judgment in favor of the plaintiffs, involves plaintiffs' effort to collect on that money judgment against one of the defendants in the Oregon case, Michael Bray. As part of that collection effort, Mr. Bray's deposition or judgment debtor examination has been taken. During the examination, Mr. Bray refused to answer a substantial number of questions, instead invoking his Fifth Amendment privilege against self-incrimination. Plaintiffs have now moved for an order compelling him to answer those questions. For the following reasons, the Court will grant the requested order.

I.

    The Court will first summarize briefly the factual basis for the judgment obtained by plaintiffs against Mr. Bray and others in the Oregon litigation. That summary is necessary to place into context Mr. Bray's assertion of the Fifth Amendment privilege in these proceedings.

    Mr. Bray was found liable to the plaintiffs under 18 U.S.C.

§248, the Freedom of Access to Clinic Entrances Act (FACE), a statute which prohibits certain activities designed to restrict access to clinics where abortions are performed.  According to the District Court decision, see Planned Parenthood of Columbia/Willamette v. American Coalition of Life Activists, 41 F.Supp. 1130 (D. Or. 1999), vacated 244 F.3d 1007 (9th Cir. 2001), Mr. Bray and the other defendants were involved with creating and disseminating "Wanted" posters containing information about physicians who performed abortions.  Prior to the creation and dissemination of these posters, three such physicians were murdered in 1993 and 1994 after similar posters were disseminated with information about them.  The Oregon Court found that the creation and dissemination of the posters in this case was specifically intended to make the physicians fear that they would be assaulted or killed and that such actions violated 18 U.S.C. §248.  As the Ninth Circuit Court of Appeals noted in Planned Parenthood of Columbia/Willamette v. American Coalition of Life Activists, 422 F.3d 949, 958 (9th Cir. 2005), the basis of liability in this case is the finding that the defendants made "a threat where a reasonable person would foresee that the listener will believe that he will be subjected to physical violence, with the intent to intimidate physicians."  In a series of decisions, the Ninth Circuit Court of Appeals has upheld the District Court's liability findings and has affirmed, but reduced in amount, an award of punitive damages against each defendant.  As a result of those proceedings, there is still a substantial unpaid judgment outstanding against Mr. Bray.

   According to the memoranda filed in this case in support of and in opposition to the motion to compel, Mr. Bray moved to Ohio in late 2003 after selling a home in Maryland.  The plaintiffs then registered their judgment in Ohio.  While in Maryland, Mr. Bray was employed as a church pastor.  He does not appear

currently to be employed.  He has children in college and children at home.  He testified that he does receive some financial support from others.  However, during his examination he refused to provide any names of associates or family members, including the name and address of the co-pastor of the church in which he was formerly employed, names of members of that church, names of members of his wife's family who may have provided him with financial support, names of others who might be supporting him financially, the identity of either individuals or entities to which he provides some financial support, the names of people he paid money to for vacation expenses, and the names of the colleges which his children attend.  He did not assert that these questions were not relevant to the issue of whether he has financial assets which can be subjected to the plaintiffs' judgment.  Rather, he refused to answer each question on Fifth Amendment grounds.

Although, at various times during the examination, Mr. Bray contended that his refusal to "name names" was based upon a desire to protect other individuals from a threat of criminal prosecution, he concedes in his responsive memorandum that he may not use the Fifth Amendment to protect others from prosecution.  Rather, he asserts that by revealing the requested information, he may be subject to future prosecution for violating either FACE, 18 U.S.C. §248, or RICO, 18 U.S.C. §1961.  The question before the Court is whether there is a realistic chance that Mr. Bray will be subject to future prosecution if he provides answers to the questions posed.

II.

The general legal principles applicable to a Fifth Amendment claim are well-stated in the following quotation from <u>United States v. Jones</u>, 703 F.2d 473, 475-76 (10th Cir. 1983):

3

> The privilege against self-incrimination protects the person claiming it from being compelled to give "answers that would in themselves support a conviction" or that "would furnish a link in the chain of evidence needed to prosecute the claimant" for a crime. Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). The privilege extends to questions propounded in a civil action, whether the claimant is a party or a witness. Maness v. Myers, 419 U.S. 449, 464, 95 S.Ct. 584, 594, 42 L.Ed.2d 574 (1975); Kastigar v. United States, 406 U.S. 441, 444-45, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). The individual asserting the privilege is not "required to prove the hazard [of incrimination] in the sense in which a claim is usually required to be established in court," Hoffman, 341 U.S. at 486, 71 S.Ct. at 818; rather the privilege may validly be asserted whenever "the witness has reasonable cause to apprehend danger from a direct answer." Id. That a witness actually fears incrimination from answering questions is not enough. The fear must be reasonable in light of the witness' specific circumstances, the content of the questions, and the setting in which the questions are asked. Id.; accord Zicarelli v. New Jersey State Commission of Investigation, 406 U.S. 472, 480, 92 S.Ct. 1670, 1676, 32 L.Ed.2d 234 (1972); Malloy v. Hogan, 378 U.S. 1, 11-14, 84 S.Ct. 1489, 1495-97, 12 L.Ed.2d 653 (1964). The trial court is to evaluate the incriminatory potential of questions asked. Hoffman, 341 U.S. at 487, 71 S.Ct. at 818. The claim of privilege cannot be sustained if the fear of self-incrimination rests on "remote and speculative possibilities"; the privilege protects only against "real dangers." Zicarelli, 406 U.S. at 478, 92 S.Ct. at 1675.

A Fifth Amendment claim may be made during the course of a judgment debtor examination. Such a claim is subject to these same general principles and, in particular, the requirement that

4

there be an objectively reasonable probability that by answering questions concerning the judgment debtor's financial situation, the judgment debtor will be placed at risk of prosecution for some crime:

> In determining the availability of defendant's Fifth Amendment privilege in these circumstances, the Court must pursue two avenues of inquiry. Initially, the Court must determine whether there is a reasonable probability that the testimony in question will be used in a prosecution against the defendant. A witness may properly invoke the privilege when he "reasonably apprehends a risk of self-incrimination . . . even if the risk of prosecution is remote." Wehling v. Columbia Broadcasting System, 608 F.2d 1084, 1087 n.5 (5th Cir. 1979). See also Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1966). Without this requirement, any judgment debtor could assert his Fifth Amendment privilege, and judgment creditors would be powerless to enforce their judgments. "The courts cannot accept Fifth Amendment claims at face value, because that would allow witnesses to assert the privilege where the risk of self-incrimination was . . . nonexistent, thus obstructing the functions of the courts." United States v. Moreno, 536 F.2d 1042, 1046 (5th Cir. 1976).

Compton v. Societe Eurosuisse, S.A., 494 F.Supp. 836, 838 (S.D.Fla. 1980).

In certain contexts, it may be readily apparent that answering questions about the existence and location of assets might lead to a criminal prosecution. For example, if there is a chance that the debtor has concealed assets during the course of bankruptcy, and thus committed bankruptcy fraud, answering such questions may well lead to a prosecution. The same might be said for a prosecution for income tax evasion where the debtor's real

income can be determined from the answers to the questions posed.

In other cases, however, including this one, the connection between information about a debtor's assets or sources of income and a future criminal prosecution is less apparent. Where that is the case, the Court must take seriously the pronouncements of various courts indicating that it is the witness' responsibility to provide something more than speculation to support the claim that there is an objective risk of prosecution. See, e.g., In re Morganroth, 718 F. 2d 161, 167 (6th Cir. 1983) ("A valid assertion of the fifth amendment privilege exists where a witness has reasonable cause to apprehend a real danger of incrimination.... A witness must, however, show a "real danger," and not a mere imaginary, remote or speculative possibility of prosecution"); Kirtley v. Abrams, 184 F.Supp. 65, 67 (E.D.N.Y. 1960) ("The constitutional protection against self-incrimination 'is confined to real danger, and does not extend to remote possibilities out of the ordinary course of law.' Heike v. United States, 227 U.S. 131, 144, 33 S.Ct. 226, 228, 57 L.Ed. 450. See also Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819; Mason v. United States, 244 U.S. 362, 37 S.Ct. 621, 61 L.Ed. 1198"); In re Connelly, 59 B.R. 421, 435 (Bankr. N.D. Ill. 1986)("[The witness] must come forward with a credible reasons why revealing such information presents more than a frivolous fear of incrimination").

Mr. Bray's opposing memorandum does not draw a direct connection between the answers to the questions posed during his examination and any specific existing or threatened criminal prosecution. Rather, he argues that the finding in the Oregon case that he violated FACE was based upon extremely tenuous evidence, consisting of no more than his First Amendment-protected writings and a loose association between him and the defendants who actually prepared and disseminated the posters in

6

question.  He also points to other cases where anti-abortion protestors have been found to have violated various federal statutes based either upon scant evidence or novel legal theories which could not have been anticipated by those persons at the time they took the actions in question.  Cobbling these circumstances together, he asserts that his fear of prosecution from simply disclosing the names of persons with whom he has had some contact is realistic.  He concludes that "[i]f anti-abortion activists can be...subjected to ongoing litigation based on wild conspiracy theories, the threat of prosecution is always real." Opposing Memorandum at 6.

    Without going into great detail concerning the facts underlying the liability finding in the Oregon case, the Court notes, first, that the Oregon District Court's opinion cited above recites a number of facts which, if true and supported by the evidence, demonstrate more than a tenuous connection between Mr. Bray and the other defendants and indicate Mr. Bray's personal involvement in a scheme which was clearly designed to, and did, place the plaintiff physicians in reasonable fear of bodily harm.  It does not appear from a reading of the several Court of Appeals opinions which reviewed the liability and damages findings that Mr. Bray argued on appeal that the evidence concerning his involvement was insufficient to support a finding of liability.  Thus, this Court cannot place great credence in his argument that the civil verdict rendered in the Oregon case is a prime example of the way in which the answers to the questions posed in this proceeding might lead to his future prosecution.

    Further, the Court simply cannot accept the proposition that if a party takes actions in a legal field where the law is still developing, that party can always deflect questions about his or her activities by stating that there is a real threat of

prosecution even though the answers to the questions posed, in light of existing law, do not appear to trigger such a threat. To hold otherwise would essentially be to give a person of Mr. Bray's position a "free pass" to object to any and all questions about assets simply because no one can predict how that information might be used in the future.  Rather than base its ruling on such speculation, the Court must evaluate the state of the law as it currently exists and determine whether, under existing statutory and case law, there is an objectively reasonable threat of prosecution here.

 The Court concludes that by answering the questions posed, Mr. Bray would be subjecting himself to an objectively reasonable threat of prosecution.  The simple fact that he had co-workers, was supported by members of his church, or received financial support from others, is neither a crime of itself nor a link in a chain of events which would reasonably lead to prosecution.  The Court is simply not willing to assume that non-criminal associations or associations which are not violative of statutes creating civil or criminal liability can or will be used as the basis of some future prosecution.  Despite Mr. Bray's protestations to the contrary, an objectively reasonable evaluation of the Court system in this country indicates that statutes enacted by Congress are given reasonable interpretations by the courts and that conduct which does not fall within the purview of such statutes, or which is protected by constitutional guarantees, will not form the basis for criminal prosecutions.  In short, Mr. Bray has failed to meet his burden of persuading the Court that by answering the questions posed to him, he is subjecting himself to a threat of prosecution that is more than imaginary or speculative.  Without such a showing, the Court cannot conclude that his invocation of the Fifth Amendment privilege against self-incrimination was proper.

III.

Based upon the foregoing, plaintiff's motion for an order compelling defendant Michael Bray to answer questions concerning his finances (#16) is granted. Within 30 days, Mr. Bray shall make himself available for an additional examination by plaintiffs at which he shall provide full and complete answers to the questions which are the subject of the motion.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge

9